IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DANNY E. MARTINEZ, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-04-95 |
| | § | |
| HUMANA, INC., et al. | § | |
|    Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pending before the Court are a Motion to Dismiss and an Alternative Motion for Summary Judgment, filed by the Defendants Humana, Inc. and Humana Insurance Company (formerly Employers Health Insurance Company)(collectively "Humana").[1] (D.E. 30). For the reasons stated herein, the Court GRANTS Humana's Motion for Summary Judgment and DISMISSES WITH PREJUDICE Plaintiff's Second Amended Complaint.

### I. FACTUAL BACKGROUND AND PROCEEDINGS

**A.   FACTUAL BACKGROUND**

On or about November 15, 2002, Plaintiff Danny E. Martinez ("Martinez") was injured in a motorcycle accident and received medical treatment. At the time of his accident, Martinez had health insurance that he had obtained through his corporate

---

[1] None of the parties have explained the relationship between the two Defendants, nor have they identified their respective roles with regard to the health plan at issue. Instead, all parties have treated the two Defendants as a single entity. Accordingly, the Court also treats the Defendants as a single entity for purposes of this Order. Similarly, because neither defendant has challenged whether it is a proper defendant in any ERISA claim, the Court presumes that both are proper ERISA defendants.

1

employer, the San Patricio Automotive Group, Inc. d/b/a/ Aransas Autoplex, who had purchased the insurance policy from Humana ("the Humana Policy"). Humana contends that this health insurance policy is an plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2000)(hereinafter "ERISA"). Martinez also had independently purchased automobile insurance coverage from Pacific Specialty Insurance Co. ("Pacific Specialty"). His Pacific Specialty policy included personal injury protection ("PIP") coverage in the amount of approximately $10,000.

The Humana Policy contains the following language that is pertinent in this case:

> LIMITATIONS AND EXCLUSIONS:
>
> This Policy does NOT provide benefits for:
>
> 21. Sickness or Bodily Injury for which there is medical payment or expense coverage provided or payable under any automobile, homeowners, premises, or any other similar coverage

Def.'s Mot. to Dismiss, Exh. B-1, pp. 55-56.

In a Section titled "Recovery Rights," the Humana Policy contains the following provision:

> <u>RIGHT OF SUBROGATION</u>
>
> As a condition to receiving benefits from Us, You agree to transfer to Us any rights You may have to make a claim, take legal action or recover any expenses paid under the Policy. We will be subrogated to Your rights to recover from any funds paid or payable as a result of a personal injury claim or any reimbursement of expenses by: ... 3. Medical Payments/Expense coverage under any automobile, homeowners, premises or similar coverages..."

>We may enforce Our Subrogation rights by asserting a claim to any coverages to which You may be entitled.
>
>If we are precluded from exercising Our Right of Subrogation, We may exercise Our Right of Reimbursement.
>
>RIGHT OF REIMBURSEMENT
>
>. . .
>
>ASSIGNMENT OF RECOVERY RIGHTS
>
>The Policy contains an exclusion for Sickness or Bodily Injury for which there is Medical Payment/Expense coverage provided or payable under any automobile, homeowners, premises or other similar coverage.
>
>If Your claim against the other insurer is denied or partially paid, We will process Your claim according to the terms and conditions of the Policy. If payment is made by Us on Your behalf, You agree to assign to Us any right You have against the other insurer for medical expenses We pay.

Def.'s Mot. to Dismiss, Exh. B-1, pp. 71-72.

It is undisputed that Humana paid all of the claims Martinez submitted to it as a result of the accident, subject to the schedule of deductibles and co-pays set forth in the Policy. (That is, Humana did not pay for Martinez' deductible, co-pays, or other non-covered expenses.) Humana's payments to Martinez' health care providers totaled approximately $27,000. It is also undisputed that Humana sought and obtained reimbursement directly from Pacific Specialty in the total amount of the PIP coverage under Martinez' policy with Pacific Specialty, or $10,051.

Prior to Humana seeking reimbursement from Pacific Specialty, representatives from Humana spoke with Mr. Martinez and his spouse, Mrs. Martinez, on several occasions. There are disputes of fact as to exactly what transpired during those conversations and, in

3

particular, whether or not Mr. or Mrs. Martinez gave permission to Humana to seek reimbursement from Pacific Specialty.

Because it is unnecessary to the Court's legal determinations in this Order, the Court will not provide the parties' versions of those conversations in any detail. In sum, Humana relies on the testimony of its employee, Carrie Erickson, to argue that it had explicit permission from Mr. Martinez to seek reimbursement from Pacific Specialty. Mr. and Mrs. Martinez, in contrast, both flatly deny having given permission for Humana to obtain the Pacific Specialty benefits. Exh. A to Pl.'s Opp. Memo, D. Martinez Aff. at 2; Exh. B to Pl.'s Opp. Memo, M. Martinez Aff. at 2. Additionally, Mr. Martinez asserts that he "never agreed to any 'recovery right' when [he] obtained coverage. [He] was only given a short summary that [he] had medical coverage." D. Martinez Aff. at 1. Other than the Policy, there is no written document in which Mr. Martinez or Mrs. Martinez indicated any willingness or gave permission for Humana to seek recovery of the $10,051 from Pacific Specialty.

**B.     PROCEDURAL BACKGROUND**

On December 19, 2003, Martinez filed this case in the 343rd Judicial District, San Patricio County, Texas, where it was assigned Cause No. S-03-6146-CV-C. On March 11, 2004, Humana timely removed the action to this Court, pursuant to 28 U.S.C. § 1441, invoking this Court's federal question jurisdiction under 28 U.S.C. § 1331. On April 7, 2004, Martinez filed a Motion to Remand, which the Court denied on May 30, 2004 after

4

finding that ERISA completely preempted Martinez' claims, thereby giving rise to removal jurisdiction.

Humana filed the motion to dismiss and alternative motion for summary judgment discussed herein on October 8, 2004. (D.E. 30). A number of other documents have been filed by the parties since that time, relating to the motion, all of which the Court has considered.

## C. OVERVIEW OF PLAINTIFF'S CLAIMS

In his Second Amended Original Complaint (D.E. 33), Martinez claims that Humana improperly "offset" benefits under his health insurance policy when it collected the $10,051 payment from Pacific Specialty. He asserts that Humana's policy and practice in seeking reimbursement or "subrogation" are in effect an attempt to circumvent the Texas Administrative Code, § 3.3501 *et seq.*, which is a law governing coordination of benefits ("COB") provisions in insurance policies.[2] Thus, he argues that Humana's actions in this case constitute a violation of Texas law. (D.E. 33 at 3). The parties appear to be in agreement that the statute does not provide a private cause of action. Thus, the Court does not construe Plaintiff's complaint as bringing a separate statutory claim based on the cited provisions. Rather, his other two claims appear to rely upon alleged violations of the COB

---

[2] The code provisions were established, in part, to permit insurers to include COB provisions in their policies and to establish an order in which plans pay their claims. Tex. Admin. Code § 3.3501. They basically require COB provisions in most insurance policies, including group health contracts, to comply with or be consistent with form COB language. See generally Tex. Admin. Code § 3.3501 *et seq.* If an insurance policy contains no COB provision or one with COB rules that differ from those permitted by the code, then that policy is automatically deemed a "primary plan," meaning it must pay claims before secondary plans. See id. at § 3.3506.

provisions to show that Humana's conduct was wrong or unlawful.

His first claim is a state claim for conversion, in which Martinez alleges that Humana wrongfully appropriated $10,051 from Martinez' PIP fund with Pacific Specialty without his consent. (D.E. 33 at 4). He seeks monetary damages and attorneys' fees, as well as declaratory and injunctive relief declaring Humana's practices invalid and ordering that Humana cease and desist the "violative practices." (Id. at 4-5).

Martinez' second claim is an alternative claim for recovery of benefits under ERISA and for injunctive relief prohibiting Humana from continuing to engage in the challenged conduct. In this claim, he seeks the benefits obtained by Humana from Pacific Specialty and attorneys' fees.

## II.  ANALYSIS

**A.    ERISA PREEMPTION**

### 1.    The Humana Policy Is An ERISA Plan.

One of the primary questions raised by Humana's motion is whether Martinez' state law claim is preempted by ERISA. Before the Court can reach that issue, however, it must address Martinez' argument that Humana has failed to put forth sufficient evidence to show that the Humana Policy is an ERISA employee welfare benefit plan.

The Court disagrees with Martinez' contention on this issue. As set forth in its Reply, Humana has provided to the Court sufficient evidence from which the Court concludes that the policy is governed by ERISA. See Meredith v. Time Ins. Co., 980 F.2d

352, 355 (5th Cir. 1993)(plan is employee welfare benefit plan governed by ERISA if it (1) exists; (2) does not fall within the "safe harbor" regulations established by the Department of Labor; and (3) was established or maintained by an employer for the purpose of benefitting participants, as required by ERISA); Kidder v. H&B Marine, Inc., 932 F.2d 347, 353 (5th Cir. 1991)(an employer's payment of premiums on behalf of its employees was "substantial evidence that a plan, fund or program [was] established"); see also D.E. 35 at 1-5).

Specifically, Humana has provided a copy of the Humana Policy, as well as competent evidence that it was established by an employer for the purpose of providing medical, care or benefits for its employees or beneficiaries, through the purchase of insurance. Humana has therefore met the first and third criteria set forth in Meredith, supra. Moreover, as correctly noted by Humana, the Policy also satisfies the second Meredith criterion, i.e., it does not fall within the "safe harbor" provisions of the regulations governing ERISA, because Martinez' employer contributes to the Plan by paying a portion of its employees' premiums. See 29 C.F.R. §§2510.3-1(j). Thus, there is sufficient evidence to show that the Humana Policy is an employee welfare benefit plan governed by ERISA.

**2.    Plaintiff's State Law Claims Are Completely Preempted By ERISA Section 502(a).**

The Court previously held that ERISA completely preempted Martinez' claims, thereby giving rise to federal question jurisdiction. (See generally D.E. 9). As explained in the Court's prior order, a state law claim that could fairly be characterized as one falling

within the scope of the civil enforcement provisions of Section 502(a) of ERISA is completely preempted by ERISA and thus gives rise to federal jurisdiction. Martinez' conversion claim seeks benefits under the Humana Policy and a determination of his rights under the Policy. Accordingly, it falls squarely within Section 502(a). See Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. 2003) (*en banc*). (See D.E. 9 at 5-8). The Court therefore has federal jurisdiction over his claim.

Martinez does not argue that his claims fall outside of Section 502. Rather, he focuses his argument against preemption on the "savings clause" of ERISA's Section 514, codified at 29 U.S.C. § 1144. The Court thus turns to the impact of Section 514 on this case.

### 3.     Interplay of Sections 502 and 514

Humana argues that Section 514 is irrelevant in cases where there is complete preemption under Section 502(a), and that it is only where a claim falls *outside* Section 502(a) that Section 514 becomes pertinent. (D.E. 30 at p. 7-8). There is also authority, however, suggesting that a state law that falls within the savings clause of Section 514 could supply the state rule of decision for a Section 502(a) claim. See, e.g., UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 376-77 & n.7; Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 377-78 (2002)(if a state law saved from preemption under Section 514 does not provide additional remedies to a plaintiff, then it could serve as a rule of decision informing the Section 502(a) claim); Clancy v. Employers Health Ins. Co., 82 F. Supp. 2d

589, 597 (E.D. La. 1999)(Louisiana statute precluding coordination of benefits in certain insurance contracts supplied the rule of decision for plaintiff's claim, which was construed as a claim under ERISA § 502(a)). See also Aetna Health, Inc. v. Davila, 124 S. Ct. 2488, 2499 (2004)("even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme).

In this case, however, Section 514 preemption does not even warrant discussion, because there is no *applicable* state law, as discussed in the next section.

### 4. Section 514 Preemption Is Irrelevant Because The State Statute Does Not Govern Humana's Conduct in This Case

The Court's order denying remand in this case relied heavily upon Arana v. Ochsner Health Plan, 338 F.3d 433 (5th Cir. 2003)(*en banc).* (See D.E. 9 at 5-8). In Arana, the plaintiff alleged that the defendant health plan violated Louisiana law when it sought reimbursement from him of proceeds he obtained from other insurers. The Fifth Circuit, sitting *en banc*, determined that the plaintiff's state court action seeking a declaratory judgment, as well as attorneys' fees and a statutory penalty was properly characterized as a claim for benefits under ERISA Section 502(a). Thus, his claims were completely preempted and conferred federal question jurisdiction.

The Arana court returned the case to a Fifth Circuit panel for a resolution of the merits of the plaintiff's claims. The panel's subsequent decision addressed issues such as those before the Court now. Arana v. Ochsner Health Plan, 352 F.3d 973 (5th Cir.

9

2003)("Arana II").  That is, the Arana II panel was tasked with determining whether the plaintiff was entitled to relief.

After noting that the district court below had granted summary judgment against the plaintiff's claim, the panel in Arana II set forth its task as follows: "The only issue we consider is the viability of Arana's claim under Louisiana law.  Only if Arana had stated a cognizable state law claim would it be necessary to determine whether ERISA preempts state law." 352 F.2d at 976.

The Arana II court held that for two independent reasons, the Louisiana law at issue did not prohibit the defendant HMO's actions in seeking reimbursement of the plaintiff's proceeds from other insurers.  The first reason was that the statute was inapplicable to his HMO, because it was not an insurer under Louisiana law.  Id. at 977-78.  The second reason, directly applicable here, is that the provision the plaintiff relied upon restricted the coordination of benefits, but not subrogation rights.  The Court explained that "the two terms – coordination of benefits and subrogation – are legally and functionally distinct." It noted that the Louisiana provisions at issue explicitly recognized and treated the two as different concepts and that the statute the plaintiff relied upon limits COB, but not subrogation.  The Court concluded:

> In this case, the subrogation provisions contained in the OHP policy allows OHP to succeed to Arana's right to the insurance proceeds paid by other insurance companies.  Subrogation does not reduce the benefits OHP furnished to Arana – Arana has collected the full amount he was entitled to under the OHP policy.  Should the Louisiana legislature wish to prohibit

> subrogation as between group and individually underwritten policies, in the same manner that it has prohibited the coordination of benefits, it is free to do so . . .

Id. at 979.

Similarly, the Court agrees with Humana that the state laws relied upon by Martinez are inapplicable here. What occurred in this case was not a coordination of benefits prohibited under the state law, but instead was more akin to subrogation.

A coordination of benefits provision, as defined in the statute, is a "provision establishing an order in which plans pay their claims." Tex. Admin. Code § 3.3503(4). Subrogation, by contrast, "simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights." Black's Law Dictionary 1468 (8th ed.2004)(cited in Atteberry v. Memorial-Hermann Healthcare Systems, 405 F.3d 344, 348 (5th Cir. 2005)). Just as in the Louisiana statute at issue in Arana II, the statutory provisions here distinguish between the two concepts:

> The COB concept clearly differs from that of subrogation. Provisions for one may be included in health care benefits contracts without compelling the inclusion or exclusion of the other.

28 Tex. Admin. Code § 3.3510(d).

Just like the plaintiff in Arana II, Martinez has collected the full amount he was entitled to under Humana's policy, and subrogation would not reduce the benefits Humana paid to Martinez. Just like the insurer in Arana II, Humana did not coordinate benefits by withholding or delaying payments or claiming that another insurer should be primary.

Rather, it paid all that it was required to pay under the Policy. Then, it sought reimbursement, or subrogated itself to Martinez' right to collect under his Pacific Specialty policy.[3]

Given the striking similarities between this case and Arana II, this Court is once again bound by the Fifth Circuit's decision in the Arana case.[4] As in Arana II, the state rules relied upon do not provide a basis for relief because what occurred here was not coordination of benefits.

Having determined that the state law is inapplicable, it is unnecessary for the court to address many of the parties' remaining contentions. Instead, the sole remaining issue for the Court to decide is whether Humana is entitled to judgment as a matter of law as to Plaintiff's Section 502(a) ERISA claim, without any reference to the state statutes governing COB.

---

[3] What has occurred here is not the typical reimbursement or subrogation scenario. In the more typical scenarios that arise in the caselaw, either: (1) the injured insured has obtained a settlement from a third party tortfeasor, and then the insurer would seek reimbursement from the insured; or (2) the third party tortfeasor has monies in either an identifiable fund or more generally, and the insurer would assert a subrogation claim against the third party directly. By contrast, here Pacific Specialty just gave the money to Humana, apparently without seeking to protect Martinez' possible right to the money. Thus, while in the typical situation, the insurer would be seeking the money from the insured or the third party; here, the insurer already has the funds, and it is the insured who is seeking to recoup them. Despite this difference, what occurred here clearly was not a coordination of benefits, because Humana paid all that it was required to pay under the policy, and did not claim to be secondary to any other insurer in terms of the order of payment.

[4] Martinez also argues that Arana is distinguishable because it involved a wholly self-funded plan, while the plan in the instant case is at least partially funded by insurance premiums. He correctly notes that states have more authority to regulate Plans that are not entirely self-funded. Martinez' argument might have some persuasive force if this Court was tasked only with deciding whether his claims were preempted under Section 514, because Section 514 contains the "deemer" clause which results in the distinction. See, e.g., FMC Corporation v. Holliday, 498 U.S. 52, 61 (1990); see also Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 747(1985). Because the Court does not resolve Martinez' claims on the basis of Section 514, however, the fact that the plan is not self-funded is irrelevant for purposes of this case.

**B.    MERITS OF MARTINEZ' SECTION 502(a) CLAIM**

As noted, Martinez' Second Amended Complaint seeks relief "under ERISA for benefits wrongfully collected and to enforce Plaintiff' rights under the plan." He sues for benefits and attorney's fees under ERISA and also seeks injunctive relief under § 502(a)(3),[5] seeking to enjoin Humana from continuing its practice regarding PIP benefits.[6]

ERISA Section 502(a) is a "relatively straightforward" provision. Aetna Health, Inc. v. Davila, 542 U.S. 200 (2004). In pertinent part, it allows a participant to bring a civil action

> to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . .

29 U.S.C. § 1132(a)(1)(B). It also allows a participant to bring an action "to enjoin any act or practice which violates . . . the terms of the plan," or "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). In order to prevail on his claim, then, Martinez must show some entitlement to relief under the terms of the Humana Policy.

Any dispute over the terms of plan is resolved by this Court under a *de novo* review standard, unless the terms of the plan explicitly state that the administrator has discretion

---

[5] Plaintiff's Second Amended Complaint cites to § 502(d)(3), but there is not such provision. Equitable relief is available in § 502(a)(3), which is what the Court presumes Martinez intended to cite.

[6] Humana does not contend that Plaintiff has failed to exhaust his administrative remedies, as he is required to do prior to bringing a claim to recover benefits under ERISA. See Hollis v. Provident Life and Accident Ins. Co., 259 F.3d 410, 416 n.2 (5th Cir. 2001). Thus, any argument based on a failure to exhaust is deemed waived. In any event, Martinez offers uncontested testimony that he asked Humana for a refund of the monies paid by Pacific Specialty and Humana refused. (D. Martinez Aff. at 2).

13

over the decisions at issue. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109-15 (1989). Humana does not argue that the Court should review its decision to obtain reimbursement under a more lenient standard, and, even under a *de novo* standard, the Court finds in Humana's favor. The Court has reviewed the language in the Humana Policy (quoted in the Factual Background section of this Order) and concludes that it is clear and unambiguous as to Humana's rights. It clearly allows the recovery or reimbursement that occurred here. (See infra at pp. 2-3). Moreover, there is no requirement that Humana obtain permission from its insured prior to seeking monies from another insurer.[7]

Notably, Martinez does not make any argument that the ***language*** of the Policy does not allow Humana's actions. Instead, he makes two separate arguments, both of which are focused on alleged extra-contractual obligations.

First, he argues that Humana violated its own practices and procedures by failing to obtain his permission prior to seeking reimbursement from Pacific Specialty. Even assuming that fact to be true, Martinez offers no authority for his argument that the terms of the ERISA Plan should be modified to conform with internal practices or policies that may afford more rights to participants. Nor does he identify any authority holding that an ERISA plan can be modified by the practice of an insurance company in doing more than what the language of the plan requires. In the absence of any authority, the Court will not

---

[7] The lack of permission required renders the disputes of fact over whether or not Mrs. Martinez gave "permission" immaterial. Cf. Anderson, 477 U.S. at 248 (the substantive law identifies which facts are material). Thus, those disputes do not preclude summary judgment.

hold that a common practice or written procedure by an insurance company can alter the plain terms of an insurance contract. Accordingly, his first argument fails.

Second, Martinez argues that the Court should "read into" the language of the Humana Policy a "make whole" requirement. The "make whole" rule is frequently applied in the context of subrogation and dictates that priority "is given to a beneficiary to keep everything he recovers from third parties until he is made entirely whole." See Sunbeam-Oster Co. Group Benefits Plan v. Whitehurst, 102 F.3d 1368, 1374 (5th Cir. 1996). If applied in this case, Martinez argues that he should be made whole first, and until that happens, Humana is not entitled to obtain any proceeds from his Pacific Specialty policy.

Martinez' argument is one that has been accepted in other circuits. See, e.g., Cagle v. Bruner, 112 F.3d 1510, 1521-22 (11th Cir. 1997)(the make whole doctrine operates as a default rule in ERISA cases, but an ERISA Plan can contract out of by utilizing specific language rejecting the rule or giving it the right to first recovery, even when a participant or beneficiary is not made whole); Barnes v. Independent Auto. Dealers Ass'n, 64 F.3d 1389, 1394 (9th Cir. 1995)(applying rule as a default rule); see also Cutting v. Jerome Foods, Inc., 993 F.2d 1293 (7th Cir. 1993)(declining to address whether the make whole rule should be used as a principle of interpretation in ERISA plans because the plan administrator was not unreasonable in determining that any such default rule was overridden by clear language in the plan).

There is no authority in the Fifth Circuit, however, that accepts the "make whole"

doctrine as to a subrogation issue in an ERISA case. Rather, the Fifth Circuit has indicated, albeit in dicta, that it would not adopt the "make whole" doctrine as either a default rule or a rule of federal common law in an ERISA case. Sunbeam-Oster Co. 102 F. 3d at 1376 n.25. The Court explains:

> Regardless of whether the Make Whole rule might be applicable in situations involving private insurance policies or Workers' Compensation, and irrespective of what we might be *Erie*-bound to hold were this a diversity case and not a federal question ERISA case, we have serious doubts whether we would ever approve or adopt the Make Whole rule as this circuit's default rule for the priority of recovery in reimbursement or subrogation between an ERISA plan and its participant or beneficiary under circumstances such as the ones we consider today. . . . [W]e emphasize that our reversal vacates in toto the district court's judgment and opinion, including, without limitation, its adoption of the Make Whole rule for purposes of construing reimbursement and subrogation rights under ERISA plans. . . .

102 F.3d at 1377-78.[8] Cf. Franks v. Prudential Health Care Plan, Inc., 164 F. Supp.2d 865, 880 (upholding an ERISA Plan's right to receive reimbursement for monies expended if a participant recovers those monies from a third party and citing Sunbeam for the proposition that "where an ERISA plan's language sets out plain and unambiguous terms for subrogation

---

[8] Martinez correctly notes that Sunbeam-Oster involved a self-funded plan, and that other courts incorporating the make whole doctrine seem to distinguish between self-funded plans and insured ERISA plans. See, e.g., Provident Life and Accident Ins. Co. v. Linthicum, 930 F.2d 14, 16 (8th Cir. 1991)(citing FMC Corp. v. Holliday, 498 U.S. 52 (1990) as holding that "ERISA applied to self-funded benefit plans and pre-empted application of a state anti-subrogation law"); Cutting v. Jerome Foods, Inc., 993 F.2d 1293, 1296 (7th Cir. 1993)("ERISA preempts state law dealing with the interpretation of an ERISA plan, unless, as is not the case here, the plan involves the purchase of an insurance policy as the method of providing plan benefits"). The Fifth Circuit's decision, however, and the quoted provision, in particular, does not limit its comments regarding the make whole rule to self-funded plans only. Rather, the court suggests that the determinative factor is whether a plan is an ERISA plan, as opposed to a "standard *individual* insurance contract." 102 F.3d at 1374 (emphasis added).

16

and reimbursement, those terms must be enforced as written").

In the absence of any authority from this Circuit, the Court declines to alter the terms of the Policy, a written contract, to incorporate a term not bargained for by the parties. In short, because the plain terms of the contract allow for the reimbursement that occurred here, Martinez' claim under Section 502(a) fails. Therefore, the Court concludes that summary judgment against Martinez' claims is proper.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiff's Second Amended Complaint is DISMISSED WITH PREJUDICE.

It is so ORDERED this 10th day of August, 2005.

_____
HAYDEN HEAD
CHIEF JUDGE